UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**BUFFALO LABORERS**
**WELFARE FUND, et al.,**

                Plaintiffs,         04-CV-0212A(Sr)

v.

**PROGRESSIVE WEATHERPROOFING, INC.,**

                Defendant.

---

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #12.

Currently before the Court is plaintiffs' motion for judgment by default. Dkt. #30. For the following reasons, it is recommended that plaintiffs' motion be granted.

### BACKGROUND

Progressive Weatherproofing, Inc. ("Progressive"), executed two separate collective bargaining agreements ("CBAs"), with Local Union No. 210 of the Laborers International Union of North America ("Union"), covering June 1, 1999 through June 30, 2002 and July 1, 2002 through at least June 30, 2007. Dkt. #30-5 & Dkt. #30-6. In accordance with the terms of the CBA, defendant was required to pay fringe benefit

contributions to the Buffalo Laborers Welfare Fund, Buffalo Laborers Pension Fund, Buffalo Laborers Training Fund and the Buffalo Laborers Security Fund ("Funds"), and to remit dues checkoffs, New york Laborers' Political Action Committee ("NYLPAC"), contributions and Construction Industry Employers Association ("CIEA"), contributions deducted from the wages of its employees to the Union.  Dkt. #30, ¶¶ 5 & 13.

Between January 1, 2002 and December 29, 2005, defendant failed to remit certain fringe benefit contributions, dues checkoffs, NYLPAC contributions and CIEA contributions and failed to pay penalty interest, as provided in the CBAs, on fringe benefit contributions which were remitted late.  Dkt. #30, ¶ 14.  As provided within the CBA's, plaintiffs utilized an independent accounting firm to audit defendant's records and assess the extent of defendant's deficiencies.  Dkt. #30, ¶ 15.  The auditor determined that defendant had failed to remit the following contributions:

- fringe benefit contributions in the amount of $61,940.83;[1]
- dues checkoffs in the amount of $6,767.15;
- NYLPAC contributions in the amount of $391.05; and
- CIEA contributions in the amount of $1,283.01.

Dkt. #30, ¶ 16.

Plaintiffs commenced this action on March 31, 2004.  Dkt. #1.  The Clerk of the Court entered default on June 31, 2004.  Dkt. #5.  The default was vacated by stipulation entered June 27, 2005, which also permitted plaintiffs to file an amended complaint.  Dkt. #8.  Defendant answered the amended complaint on July 22, 2005 and

---

[1] In response to plaintiffs' notice to admit, defendant concedes that it failed to pay $61,940.83 in fringe benefit contributions.  Dkt. #30-16, ¶¶ 118 & 266.  Subsequently, defendant remitted $3,348.75 to the Funds.  Dkt. #30, ¶ 36.  Accordingly, $58,592.08 remains outstanding.

the case proceeded in accordance with the Court's Case Management Order until defendant's counsel moved to withdraw from this matter on April 3, 2007. Dkt. ##11 & 24. The Court directed the president of Progressive Weatherproofing, Inc., James R. Jajkowski, to appear at the hearing regarding the motion to withdraw. Dkt. #25. At the hearing, the Court granted counsel's motion to withdraw and directed Mr. Jajkowski to obtain new counsel no later than May 18, 2007. Dkt. #28. The Court warned Mr. Jajkowski that plaintiffs would be entitled to entry of default judgment on the amended complaint if defendant failed to obtain new counsel to defend this action. Dkt. #29. No notice of appearance has been filed on behalf of defendant.

Plaintiffs moved for default judgment on June 22, 2007. Dkt. #30. Plaintiffs served a copy of the motion upon defendant at its corporate address. Dkt. #31. The Court mailed a copy of its scheduling order for the motion to the corporate address and to the address previously used to reach defendant's president, James R. Jajkowski. Dkt. #32. Although the scheduling order addressed to the corporation was returned as undeliverable, the scheduling order addressed to Mr. Jajkowski was not returned.

## DISCUSSION AND ANALYSIS

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). This Rule "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Id.* Because the default in this action most recently occurred subsequent to discovery, the Court also has the benefit of numerous admissions by defendant. Dkt. #30-16. As a result, it is clear that defendant is liable to plaintiffs for

failing to meet its obligations as set forth in the collective bargaining agreements, which are enforceable pursuant to ERISA. *See* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . by a fiduciary . . . to enforce any provisions of this subchapter or the terms of the plan); 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.").

> ERISA provides that
>
> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --
>
> (A)  the unpaid contributions,
>
> (B)  the interest on the unpaid contributions,
>
> (C)  an amount equal to the greater of –
>
>     (i)  interest on the unpaid contributions, or
>
>     (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)  such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid

> contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g).  The CBAs similarly provide that

> In the event that formal proceedings are instituted before a Court of competent jurisdiction to collect delinquent contributions and a Court renders a judgment in favor of the Funds, the Employer shall pay to the Funds (i) the unpaid contributions; (ii) interest on unpaid contributions at the rate prescribed under section 6621 of Title 26 of the United States Code; (iii) interest on unpaid contributions as and for liquidated damages; (iv) reasonable attorneys' fees; and (v) such other legal or equitable relief as the Court deems appropriate.

Dkt. #30-5, article X, section 9(b) & Dkt. #30-6, article X, section 10(b).

In assessing the amount of such an award, the Court of Appeals for the Second Circuit has determined that it is not necessary for the Court to hold a hearing to fix damages so long as the Court has sufficient basis, in the form of affidavits or documentary evidence, for its award of damages.  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (collecting cases).  In the instant case, plaintiffs have proffered sufficient evidence, in the form of defendant's admissions, which concede the accuracy of the audit conducted by the independent accounting firm, affidavits from the plan fiduciary and plaintiffs' counsel, and voluminous supporting documents, to warrant an award of damages.  Specifically, plaintiffs have demonstrated that defendant owes $58,592.08 in fringe benefits; $6,767.15 in union dues checkoffs; $391.95 in NYLPAC contributions; and $1,283.01 in CIEA contributions.  Dkt. #30, ¶ 16.

In addition to the principal amount, ERISA entitles plaintiffs to recover interest on the unpaid contributions, calculated at the rate specified in the CBAs or, if

none is stated, the rate prescribed by 26 U.S.C. § 6621.  *See* 29 U.S.C. § 1132(g)(2)(B).  The CBAs provided for interest on unpaid contributions at the rate prescribed under section 6621 of Title 26 of the United States Code.  Dkt. #30-5, article X, section 9(b) & Dkt. #30-6, article X, section 10(b).  Pursuant to the affidavit of plaintiffs' counsel, supported by a calculation worksheet applying the interest rate set forth in the statute, defendant owes $9,453.49 in interest on the unpaid fringe benefit contributions through May 29, 2007.  Dkt. #30-21, ¶ 12.

"Liquidated damages serve as a statutory penalty for a defendant's failure to make required contributions."  *Finkel v. Tech Man, Inc.*, No. 06-CV-2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007).  Pursuant to the CBAs, plaintiffs are entitled to liquidated damages in the amount of the interest on unpaid contributions.  Dkt. #30-5, article X, section 9(b) & Dkt. #30-6, article X, section 10(b).  Accordingly, plaintiffs are entitled to $9,453.49 in liquidated damages.

Plaintiffs also seek interest on late payments of fringe benefit contributions.  Dkt. #30, ¶ 47.  Pursuant to the 2002 CBA:

> If the Employer is found to be delinquent in the payment of fringe benefit contributions to the Funds, the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the day due until the date of payment at the rate of 10% per annum.  If the funds bring an action to recover the interest or delinquent fringe benefit contributions, the Employer is obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

Dkt. #30-6, article X, section  10(a).  Defendant admits owing interest for late payments of fringe benefits.  Dkt. #30, ¶ 46.  However, upon review of the calculation of interest owed, the Court notes that $4,776.91 of the penalty sought by plaintiffs accrued in

2001, when the CBA provided that interest would be accrued in accordance with 26 U.S.C. § 6621.  Dkt. #30-5, article X, section 9(a).  As it does not appear that plaintiffs calculated the interest due on the 2001 delinquent payments in accordance with the terms of the CBA, it is recommended that the Court subtract the interest sought from 2001 from the judgment awarded.  Accordingly, it is recommended that plaintiffs be awarded $24,710.47 in interest accrued on delinquent payments for fringe benefit contributions.

New York's Civil Practice Law and Rules provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of contract."  N.Y.C.P.L.R. § 5001(a).  Where damages arising from the breach of contract "were incurred at various times, interest shall be computed upon each item from the date it was incurred."  N.Y.C.P.L.R. § 5001(b).  New York provides for an interest rate of 9% per annum.  N.Y.C.P.L.R. § 5004.  In accordance with these rules, counsel affirms that he "calculated interest on unpaid union dues checkoffs, NYLPAC and CIEA contributions by using an uncompounded 9% interest rate, from the date due through May 29, 2007."  Dkt. #30-21, ¶14.  In accordance with this calculation, it is recommended that the Union be awarded $1,040.91 in interest on the unpaid union dues checkoffs, NYLPAC contributions and CIEA contributions.

Plaintiffs seek $36,550.00 in attorneys' fees.  Dkt. #30, ¶ 69.  The calculation of a reasonable attorney's fee is governed by the lodestar approach, which requires the Court to multiply "the number of hours reasonably expended" by a "reasonable hourly rate."  *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983).  In order to properly assess whether hours were reasonably expended, the application should include "contemporaneously created time records that specify, for each attorney, the

date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (internal quotations and citations omitted). A reasonable rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs' counsel included a principal attorney billing at an hourly rate between $175.00 and $195.00; an attorney of counsel to the firm billing at an hourly rate of $195.00; associate attorneys billing at hourly rates between $110.00 and $165.00, as well as two paralegals billing at an hourly rate of $60.00. Dkt. #30-23 thru 30-28. The hourly rates appear reasonable given the years of experience for each attorney. Moreover, upon review of the time and billing records, the Court is satisfied that the time expended in this matter is generally reasonable and appropriately divided between senior counsel and associates. However, the Court finds that the time spent preparing for a motion for summary judgment, which amounts to more than $17,000 of the $36,555.00 requested, was excessive. In addition, the Court does not believe that it is appropriate to require the defendant to reimburse for the paralegal's time, valued at $24.00, spent opening the file or preparing a package for mailing. Dkt. #30-23, p.20. Accordingly, it is recommended that plaintiffs be awarded reasonable attorneys' fees totaling $26,531.00 plus $190.00 in costs, consisting of the $150.00 filing fee and a $40.00 fee for service of the summons and complaint through the New York Secretary of State. Dkt. #30, ¶ 67.

Plaintiffs also seek reimbursement of the cost of the audit. Dkt. #30, ¶ 58. Pursuant to the 2002 CBA, the "funds shall bear the cost of an inspection and audit, except where the audit discloses a delinquency in excess of 10% of the prior year's contribution or $2,000.00, whichever is greater. Dkt. #30-6, article X, section 12(b). Plaintiffs' counsel affirms that the audit's determination of $61,940.83 is more than 10% of the prior year's contribution. Dkt. #30, ¶ 60. The auditor's invoices support an award of $9,380.87 to plaintiffs as reimbursement for the cost of the audit. Dkt. #30-19.

## CONCLUSION

For the reasons set forth above, it is recommended that plaintiffs' motion (Dkt. #30), for judgment by default be **GRANTED** and that plaintiffs be awarded judgment as follows:

- $58,592.08 to the Funds for unpaid fringe benefit contributions;
- $9,453.49 to the Funds for interest on unpaid fringe benefit contributions;
- $9,453.49 to the Funds as liquidated damages;
- $24,710.47 to the Funds as interest on delinquent fringe benefit payments;
- 6,767.15 to the Union for unpaid union dues;
- $391.95 to the Union for unpaid NYPLAC contributions;
- $1,283.01 to the Union for unpaid CIEA contributions;
- $1,040.91 to the Union as interest on unpaid contributions;
- $9,380.97 to the plaintiffs for costs of the audit;
- $26,531.00 to the plaintiffs for attorneys' fees; and
- $190.00 to the plaintiffs for costs

for a total judgment of $147,794.52.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report,

<u>Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to counsel for plaintiffs, defendant's corporate address and to Jame R. Jajkowski, as President of Progressive Weatherproofing, Inc.

**SO ORDERED.**

DATED:   Buffalo, New York
            August 6, 2007

                                    **S/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**